UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-80575-CV-HURLEY/HOPKINS

ROOF & RACK PRODUCTS, INC.,

    Plaintiff,

v.

GYB INVESTORS, LLC and
RIGID GLOBAL BUILDINGS, LLC,

    Defendants.
_____/

## ORDER GRANTING-IN-PART AND DENYING-IN-PART
## GYB INVESTORS, LLC'S MOTION TO DISMISS AND TO STRIKE

**THIS CAUSE** comes before the Court upon Defendant GYB Investors, LLC's ("GYB") Motion to Dismiss and to Strike [ECF No. 102], filed in response to Plaintiff Roof & Rack Products, Inc.'s ("Roof & Rack") Second Amended Complaint [ECF No. 95] for copyright infringement (Count I), contributory copyright infringement (Count II), and inducement of copyright infringement (Count III) under The Copyright Act of 1976, 17 U.S.C. § 501 ("Copyright Act"), violation of The Digital Millennium Copyright Act (DMCA), 17 U.S.C. § 1202(2)(a), (b) (Count IV), and breach of contract (Count V).  GYB moves to dismiss the Second Amended Complaint for "failure to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6), and "failure to join a [required] party," Fed. R. Civ. P. 12(b)(7).  GYB also moves to strike any references to the acts by GYB's members, John Sullivan and Gregory Pappas.  Fed R. Civ. P. 12(b)(f)(2).

## I. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Under Rule 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## II. BACKGROUND

Plaintiff is Roof & Rack, a Florida firm that designs, engineers, and constructs drystack boat storage facilities. 2d Am. Comp. ¶¶ 1, 17. Defendant GYB is a Texan LLC that owns a marina in Galveston, Texas. *Id.* ¶ 2–3, 18. John Sullivan and Gregory Pappas are members of GYB. *Id.* ¶¶ 4–5.

On May 3, 2012, Roof & Rack contracted with GYB to develop a drystack facility in GYB's marina. *Id.* ¶ 19. Under the contract, Roof & Rack would provide "structural drawings" for the drystack facility. *Id.* Ex. A. at 2, ¶ 1. In consideration, GYB would pay Roof & Rack $20,000. *Id.* The parties "intend[ed] . . . , subject to the parties reaching final agreement on the terms and conditions in the attached proposal" that Roof & Rack would construct the drystack facility as well. *Id.* ¶ 2. The contract determined the rights Roof & Rack would have to its drawings if the parties could not agree on the proposal. The contract, in relevant part, provides as follows:

2

> WHEREAS, the parties intend to enter into an agreement whereby Roof & Rack will perform the fabrication and erection of the buildings, based on the scope of work and price indicated in the attached proposal, but desire at this time to only contract for preparation of drawings; IT IS THEREFORE AGREED AS FOLLOWS:
>
> 1. Roof & Rack shall provide the necessary structural drawings for $20,000.00, with $10,000 being paid upon execution of this Agreement, and the remainder paid when the engineering are ready to be delivered to the Owner. . . .
> 2. *The parties hereby confirm their intention that Roof & Rack perform the construction services in the attached proposal, subject to the parties reaching final agreement on the terms and conditions to be included in the attached proposal.* In the event the parties are unable to reach agreement, it is understood that all drawings prepared by Roof & Rack shall remain the property of Roof & Rack, and Owner shall not be free to utilize Roof & Rack's drawings without the express consent of Roof & Rack. . . . . *Same are submitted with the understanding that the information will not be disclosed to any competitor of Roof & Rack, nor disclosed by [O]wner to any third party, other than as necessary for the advancement of this project.* By way of example and not limitation, Owner shall be free to deliver such items to its engineers on the project in order to continue the permitting and completion of the project and shall advise them not to disclose any information to any third party. *The Owner understands and agrees that for any reason should they elect not to use Roof & Rack Products, Inc., to fabricate and construct the structure being designed and engineered, the Owner will not use a design that is the same, similar too or moderately different than the one that is being engineered by Roof & Rack Products, Inc.*
> 3. Provided the parties reach final agreement on terms and conditions for construction of the improvements in the attached proposal, the $20,000.00 paid for the drawings will be applied against the contract price reflected in the proposal, thereby reducing the remaining balance of the contract price to $874,975.00.

*Id.* at 1–2 (italicization added).

Roof & Rack prepared the drawings and provided them to GYB, and GYB paid Roof & Rack $20,000. 2d Am. Comp. ¶ 21. Ultimately, GYB decided against using Roof & Rack to construct the facility. *Id.* According to Roof & Rack, GYB then used, and distributed for others to use, Roof & Rack's drawings for the drystack facility. *Id.* ¶¶ 27–29. Sullivan and Pappas, on behalf of GYB, distributed the drawings to four independent contractors, approving their use and instructing the firms to use the drawings "to *inter alia*, (a) bid on the construction of the drystack

3

boat storage facility, and (b) fabricate part or all of the drystack boat storage facility, including but not limited to foundation details, locations of vertical bolts to engage plates attached to vertical beams, reactions, bunker beam details, vent and skylight details." *Id.* ¶ 30. Sullivan and Pappas also "distribut[ed] infringing drawings from . . . [the independent contractors], knowing that the Roof and Rack name had been removed therefrom and/or that another entity's name had been added thereto." *Id.* ¶ 29.

### III. DISCUSSION

#### A. COPYRIGHT INFRINGEMENT AGAINST GYB INVESTORS, LLC

A defendant violates the Copyright Act if it "violates any of the exclusive rights of the copyright owner . . . ." 17 U.S.C. § 501(a). A copyright owner has "the exclusive rights to do and to authorize [someone] . . . to reproduce the copyrighted work in copies," § 106(1), and "to prepare derivative works based upon the copyrighted work," § 106(2). To state a claim for copyright infringement, a plaintiff must show "(1) it owns a valid copyright in the [work] and (2) defendants copied protected elements from the [work]." *Smith v. Casey*, 741 F.3d 1236, 1241 (11th Cir. 2014) (internal quotation marks and citation omitted) (alteration in original). The term "copying" is a "short-hand term for violating any of the copyright owner's exclusive rights enumerated in section 106 of the 1976 act." *See* M. Elaine Buccieri, *Causes of Action for Copyright Infringement Under the Federal Copyright Act of 1976, as Amended*, 9 Causes of Action 65 2d, § 4 (last updated May 2014). "Anyone who trespasses into [the copyright owner's] domain by using or authorizing the use of the copyrighted work in one of the . . . ways set forth in the statute, is an infringer of the copyright." *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 433 (1984).

4

Roof & Rack attaches to its Second Amended Complaint a Certificate of Registration issued by the United States Copyright Office and effective on May 23, 2013. 2d Am. Comp. Ex. B. The title of the work is "Galveston Yacht Basin Marina," and the claimant is Roof & Rack Products, Inc. *Id.* Under the Copyright Act, "[i]n any judicial proceedings the certificate of a registration made before within five years after the first publication of the work shall constitute prima facie evidence of the validity of the copyright and the facts stated in the certificate." 17 U.S.C. § 410. A certificate of registration serves as prima facie evidence of "originality and susceptibility to copyright," *Donald Frederick Evans and Assocs., Inc. v. Cont'l Homes, Inc.*, 785 F.2d 897, 903 (11th Cir. 1986) (internal quotation marks and citation omitted), as well as "valid ownership," .g. *Rogers v. Koons*, 960 F.2d 301, 306 (2d Cir. 1992).

Having proved ownership, Roof & Rack then alleges that GYB distributed Roof & Rack's drawings and approved their use to prepare bids and to construct the drystack facility. Roof & Rack alleges that GYB authorized the use of the following protected elements: "foundation details, locations of vertical bolts to engage plates attached to vertical beams, reactions, bunker beam details, [and] vent and skylight details." By authorizing, at least, the preparation of derivative works from Roof & Rack's drawings, GYB trespassed on Roof & Rack's exclusive rights under the Copyright Act. Therefore, Roof & Rack makes a prima facie case for copyright infringement.

GYB responds that Roof & Rack, by their contract, provided GYB an implied nonexclusive license to use its work. "An implied nonexclusive license is created when one party creates a work at another party's request and hands it over, intending that the other party copy and distribute it." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 956 (11th Cir. 2009).

5

To determine whether Roof & Rack intended that GYB copy and distribute its drawings requires a reading of the contract, discussed within the next section, below.

## B. BREACH OF CONTRACT

In Florida, to state a claim for breach of contract, a plaintiff must show "(1) the existence of a contract; (2) material breach of that contract; and (3) damages resulting from the breach." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) (citing Friedman v. N.Y. Life Ins. Co., 985 so.2d 56, 58 (Fla. 4th DCA 2008). Although the Second Amended Complaint does not specify which of GYB's actions breached the contract, Roof & Rack, in its response to GYB's Motion to Dismiss, narrows the conduct to the following:

> GYB did not use Roof and Rack to erect and build the facility, and Roof and Rack did not give GYB express consent to use the drawings to build the facility. GYB built the facility using Roof and Rack's design and drawings, and GYB disclosed the drawings to third parties.

Def.'s Resp. to GYB Mot. to Dismiss 6.

Roof & Rack claims that GYB Investors breached the contract either by not using Roof & Rack to build the facility or by distributing Roof & Rack's drawings. Only the latter can support a claim for breach of contract. The former cannot because the contract does not require GYB to use Roof & Rack to build the facility. Instead, the contract provides that such use is "subject to the parties reaching final agreement on the terms and conditions to be included in the attached proposal." Roof & Rack does not allege that the parties reached final agreement; therefore, Roof & Rack does not allege a breach of contract for GYB's failure to use Roof & Rack to build the facility.

Next, the parties dispute whether GYB had a duty not to distribute Roof & Rack's drawings. GYB believes it had no such duty, and, per the contract, could disclose the drawings

"as necessary for the advancement of this project." GYB reads "this project" to mean GYB's drystack facility, not the project between Roof & Rack and GYB, so that even if GYB did not use Roof & Rack to build the drystack facility, GYB could disclose the drawings. Roof & Rack reads "this project" to mean GYB and Roof & Rack's project, so that upon GYB's decision to use another builder for the drystack facility, GYB could no longer disclose the drawings.

In Florida, "parties are bound by the unambiguous terms of their contract." *Chrysler Realty Corp. v. Davis*, 877 So. 2d 903, 906 (Fla. 4th DCA 2004). Contract language is "ambiguous only if it is susceptible to more than one reasonable interpretation." *Vyfvinkel v. Vyfvinkel*, 135 So. 3d 384, 385 (Fla. 5th DCA 2014). In the present case, the contract language is clear and unambiguous. The contract was to proceed in two stages. In the first stage, Roof & Rack was to design the drystack facility and would be paid $20,000 for that portion of the work. In the second stage, the parties were to finalize the construction proposal pursuant to which Roof & Rack would construct the drystack facility. Both Roof & Rack and GYB discharged their obligations under the first stage, obligations which they undertook with the expectation that Roof & Rack would construct the drystack facility. The contract explicitly confirms the parties' intentions that Roof & Rack would construct the facility, and provides for Roof & Rack's intellectual property rights if the second stage of the contract were not reached. By choosing not to use Roof & Rack to construct the drystack facility, yet nonetheless distributing Roof & Rack's drawings, GYB's has acted so as to support at least a *prima facie* case of breach of contract. And, because the contract does not show that Roof & Rack intended that GYB "copy and distribute" Roof & Rack's drawings as GYB did, absent extrinsic evidence of intent the contract does not grant GYB a nonexclusive license. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d

7

949, 956 (11th Cir. 2009) ("In determining whether an implied license exists, a court should look at objective factors evincing the party's intent, including deposition testimony.").

### C. DIGITAL MILLENNIUM COPYRIGHT ACT

Under the Digital Millennium Copyright Act (DMCA) it is illegal to "(1) intentionally remove or alter any copyright management information," . . . or "(3) distribute . . . copies of works . . . knowing that copyright information has been removed or altered without authority of the copyright owner or the law . . . ." 17 U.S.C. § 1202(b)(1), (3). "Copyright management information" includes "information conveyed in connection with copies" of the work, such as the "title" and the "name of . . . the author." § 1202(c)(1)–(2). Roof & Rack alleges that GYB violated the DMCA by distributing copies of the Roof & Rack drawings "knowing that Roof & Rack's name had been removed therefrom and/or that another entity's name had been added thereto." 2d Am. Comp. ¶ 29.

GYB argues that Roof & Rack fails to state a claim for a violation of the DMCA because the DMCA only applies to "technological" infringement. GYB cites *Textile Secrets Intl'l, Inc. v. Ya-Ya Brand, Inc.*, 524 F. Supp. 2d 1184, 1201–02 (C.D. Cal. 2007), which found that § 1202(b) "was [not] intended to apply to circumstances that have no relation to the Internet, electronic commerce, automated copyright protections, or management systems, public registers, or other technological measures or processes as contemplated in the DMCA as a whole." To read it otherwise, *Textile Secrets* reasoned, would contradict the "legislative intent behind the DMCA to facilitate electronic and Internet commerce." *Id.* at 1202.

Other courts, however, focusing on the plain language of the DMCA, have held differently, and approved the DMCA's application to non-technological contexts. *See Murphy v. Millennium Radio Group LLC*, 650 F.3d 295 (3d Cir. 2011); *Agence France Presse v. Morel*,

8

769 F.Supp.2d 295, 305–06 (S.D.N.Y. 2011). Although here, as in *Murphy*, "the legislative history of the DMCA is *consistent* with [the defendant's] interpretation," it does not "actually *contradict*[]" it. *Murphy*, 650 F.3d 304 (emphasis in original). Instead, § 1202(b) "simply establishes a cause of action for the removal of (among other things) the name of the author of a work when it has been 'conveyed in connection with copies' of the work." *Id.* at 302. Because the Court must consider a statute's plain meaning before it considers its legislative history, *see e.g., United States v. Yates*, 733 F.3d 1059, 1064 (11th Cir. 2013), Roof & Rack's allegations are sufficient to a state a claim for violation of the DMCA.

### D.  CONTRIBUTORY COPYRIGHT INFRINGEMENT

Roof & Rack claims one count of contributory copyright infringement and one count of inducement of copyright infringement. Although Roof & Rack separates its counts, inducement is but a subset of contributory copyright infringement. A defendant commits contributory infringement when it, "with knowledge of the infringing activity, *induces*, causes, or materially contributes to the infringing conduct of another." *Casella v. Morris*, 820 F.2d 362, 365 (11th Cir. 1987) (quoting *Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971)) (emphasis added). Roof & Rack alleges that GYB Investors contributed to the copyright infringement by the independent contractors to whom GYB distributed Roof & Rack's drawings. The allegations in the complaint, however, are insufficient to make such a case. Contributory infringement "necessarily must follow a finding of direct or primary infringement." *Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 845 (11th Cir. 1990). But Roof & Rack does not allege that any independent contractor actually used Roof & Rack's drawings, only that GYB instructed them to do so.

9

Beyond conclusory allegations of infringement,[1] nowhere in its complaint does Roof & Rack specify how, or through what conduct, the independent contractors infringed upon Roof & Rack's copyright.  Without a showing of the infringing conduct of another, there is no direct or primary infringement to which GYB could contribute.

GYB also argues that the independent contractors are indispensable, or "required," parties under Federal Rule Civil Procedure 19(a)(1), and moves to dismiss the complaint for failure to join them as defendants.  *See* Fed. R. Civ. P. 12(b)(7) (providing for a motion to dismiss for "failure to join a party under Rule 19").  But, this argument is unavailing.  The doctrine of contributory infringement follows from the doctrine of joint-tortfeasors.  *See Gershwin*, 443 F.2d at 1162 (explaining that liability for contributor infringement is "predicated upon 'the common law doctrine that one who knowingly participates or furthers a tortious act is jointly and severally liable with the prime tortfeasor'") (internal quotation marks and citation omitted); *see BUC International Corp. v. International Yacht Council Ltd.*, 517 F.3d 1271, 1278 (11th Cir. 2008) ("[C]opyright infringement is in the nature of a tort, for which all who participate in the infringement are jointly and severally liable . . . .") (internal quotation marks and citation omitted).*Cf. Bauer Lamp Co., Inc. v. Shaffer*, 941 F.2d 1165, 1171 (11th Cir. 1991) ("[S]ince trade dress infringement is a tort, [the defendants] may be held responsible as joint tort-feasors.").  Because contributory infringers are joint tort-feasors, courts do not consider them indispensable parties.  *See e.g.*, *Bassett v. Mashantucket Pequot* Tribe, 204 F.3d 343, 358 (2d Cir. 2000); *see generally* 7 Wright, Miller & Kane, Federal Practice and Procedure § 1614 (3d ed. 2001) ("A suit for infringement may be analogized to other tort actions; all infringers are

---

[1] *See e.g.*, 2d Am. Comp. ¶ 29 (alleging that Sullivan and Pappas "distribut[ed] infringing drawings from [the independent contractors]").

jointly and severally liable. Thus, plaintiff may choose whom to sue and is not required to join all infringers in a single action."). Therefore, Roof & Rack need not join the independent contractors.

### E.  MOTION TO STRIKE

Finally, GYB moves to strike the Second Amended Complaint to remove any references to Sullivan and Pappas. *See* Fed. R. Civ. P. 12(f) ("The court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter."). Roof & Rack originally named Sullivan and Pappas as defendants in its Amended Complaint. After voluntarily dismissing them, Roof & Rack sought leave to amend its Amended Complaint to, among other things, add them again. The Court granted Roof & Rack leave to amend its Amended Complaint, but denied Roof & Rack leave to add Sullivan and Pappas as GYB Investors. *See* Order on Pl.'s Mot. to Am. [ECF No. 91]. Although in its Second Amended Complaint Roof & Rack has removed Sullivan and Pappas from the case caption, the complaint names them as parties, 2d Am. Comp. ¶¶ 4–5, asserts the Court's personal jurisdiction over them, *id.* ¶¶ 11–12, as well as proper venue, ¶ 15, and retains allegations about Sullivan and Pappas' personal conduct, *id.* ¶¶ 29–31. GYB moves to strike these paragraphs, arguing that Roof & Rack acted contemptuously, in direct violation of the Court's order, by refusing to remove any allegations about Sullivan and Pappas.

GYB Investors can cite no particular provision of the Court's order that Roof & Rack violates, because the Court did not order Roof & Rack to remove any allegations as to Sullivan and Pappas. The court only denied Roof & Rack an opportunity to add them again as defendants with GYB. Because Sullivan and Pappas are members of GYB, an LLC, a complaint that does not mention them or their actions would necessarily be incomplete. While Roof & Rack's assertions of personal jurisdiction and venue are unnecessary, because Sullivan and Pappas are

11

Case 9:13-cv-80575-DTKH   Document 130   Entered on FLSD Docket 07/08/2014   Page 12 of 12

Order Granting-in-Part and Denying-in-Part Motion to Dismiss and to Strike
*Roof & Rack v. GYB Investors, et al.*, No. 13-80575-CV-Hurley/Hopkins

no longer defendants, it is not true that assertions of their conduct "ha[ve] no possible relation to the controversy, may confuse the issues, or otherwise prejudice a party." *Garcia v. Chapman*, 911 F. Supp. 2d 1222 (S.D. Fla. 2012) (Altonaga, J.) (internal quotation marks and citation omitted). Therefore, Roof & Rack need not remove its references to Sullivan and Pappas.

### IV. CONCLUSION

For the aforementioned reasons, it is hereby

**ORDERED** and **ADJUDGED** that:

1. Defendant GYB Investors, LLC's Motion to Dismiss and to Strike [ECF No. 102] is **GRANTED-IN-PART** and **DENIED-IN-PART**.

   Counts II and III of Plaintiff's Second Amended Complaint are **DISMISSED WITHOUT PREJUDICE**.

2. Defendant **MUST ANSWER** Plaintiff Roof & Rack Products, Inc.'s ("Roof & Rack") Second Amended Complaint [ECF No. 95] no later than **FIFTEEN (15) DAYS** from the date this order is entered.

**DONE** and **SIGNED** in Chambers at West Palm Beach, Florida this 8th day of July, 2014.

Daniel T. K. Hurley
United States District Judge

*Copies provided to counsel of record*